Lopez v. Ashcroft is submitted, so we'll begin with CASTRO-SARAVIA v. Ashcroft. And before council begin, the clock, if you're not familiar with it, will count your time down. If you want to save, if you're appellant, save time for rebuttal, you can let me know at the beginning. Try to monitor your time so that you do save the time. It tends to sort of evaporate as you're talking, as you know. So many people say finally or briefly or whatever, and by then it's well into overtime. So do watch the clock, and we'll hear you out. Okay? So we'll begin with the first case, CASTRO-SARAVIA. Your Honor, I'd like to reserve one minute for rebuttal. Okay. Please record. My name is John Ayala. I am the attorney for Petitioner Marvin Castro. This petition was brought to the Ninth Circuit based on denials of due process that occurred before the Board of Immigration Appeals and before the Immigration Court. Essentially, Mr. Castro was before an immigration judge that the evidence and his decision indicate was not an impartial judge, was not a neutral arbiter, and, in fact, made decisions which questioned whether or not Mr. Castro had due process before his court. In fact, Mr. Castro was, in fact, somebody who was given a legal presumption of hardship in his application for what's called NACARA, suspension of deportation, which the judge found to have the government to have rebutted based simply on the fact that Mr. Castro had a father in Guatemala, despite the fact that Mr. Castro had lived in the United States since he was 10 years of age, was 24 years of age at the time of this hearing, had obtained his high school degree, his associate in arts degree, and lived a considerable portion of his life in the United States, and was also participating in counseling and helping youth in the California Youth Authority. The judge found the presumption of hardship, which is part of the NACARA statute, which is a legal presumption, found to have been rebutted by the fact that he had a father in Guatemala, the same father who abused his mother, and that caused him and his mother to flee Guatemala. This is what you're arguing is his bias? Well, that was part of the fact that the judge found that the presumption was rebutted. We believe that that is a legal issue which is subject to review. You started out your argument by saying this was a biased immigration judge. What is the evidence of bias? The evidence of bias is in the decision and where the judge basically states that my client could have not, Mr. Castro could not have done anything more with his life to present anything more favorable in his case. He did everything that he was supposed to and excelled within the youth authority system. But the fact that he had committed an act, an act as a 13-year-old boy, because of that he would not find it within him to approve any case of a person who committed the act that this 13-year-old boy did. The act, of course, was a homicide. Mr. Castro was adjudicated delinquent in the California youth system for a homicide when he was 13 years of age. He spent his adolescence at the youth authority and within the youth authority flourished as one of the success stories. He was a model prisoner apparently. Yes, he excelled and he, in fact, was not only a model prisoner, but also was seen as an example of how a youth can be rehabilitated. All these factors were presented to the court. However, the judge stated that he could not, in essence, live with himself if he granted a case in which somebody who committed this crime, you know, would benefit from residency. However, this individual had a legal presumption on his side and the judge's rebuttal, his logic was illogical, to say the least. In fact, the judge in essence stated that he would not have a fair hearing. I have the same concern Judge Fisher does. How does the fact that the judge ruled against your client in making a good character determination, which the judge found difficult to make given the fact that your client had murdered someone, amount to a showing of judicial bias? Why isn't that just inherent in the reasoning process that the judge employed in discharging his duties to determine whether or not your client met that particular factor for entitlement to cancellation? The thing is, Your Honor, there was no balancing whatsoever. There is a standard that he has to go through with discretion. It's under a matter of CVT. The judge did not balance. The judge basically said you have all these positive equities, but, you know, you were responsible for the death of somebody and you're not going to be approved to anything in this court. And that, in essence, gave Mr. Castro, it's the implication that he walked into court with the predestined results. Judges are supposed to balance in the immigration court. In this particular case, the judge stated in his decision that he wouldn't have granted this case in the first place. He presented the most favorable case possible, but he would not grant the case in any respect, no matter what evidence he presented. He wouldn't have granted it in the first case. Excuse me? Are you quoting him or are you paraphrasing? I'm just paraphrasing, Your Honor. He said it's a close case. He said he weighed it on the record. He said, you know, he granted that he'd done all sorts of good things during his CYA stay, but that balanced against the or weighed against the crime that he'd originally committed. He didn't exercise, he declined to exercise his discretion. That is correct. What would you have him do? Well, Your Honor, one is he can't take into consideration the Juvenile Act. He cannot? For immigration purposes, Juvenile Acts are not grounds of inadmissibility or deportability. There's case law that states that the juvenile delinquency is a civil adjudication and not a criminal adjudication. He has to take into consideration something more than the fact that he just killed someone, that this person, this child, who was a child, was responsible for the death of another person. He was 13. He was 13. And a member of a gang that apparently was engaged in gang warfare with another gang. Why isn't that relevant to whether or not your client could demonstrate good character as a citizen of the community? Well, it is relevant. What is relevant, Your Honor, is the fact that the juvenile, that he was adopted to the juvenile court system. He was not tried as an adult. He was placed in a rehabilitative program. He didn't come to this country until he was 10 years old, and then he joined a gang within a couple years of arriving here. I'm not sure I understand your point. Well, our point, Your Honor, is that it was a juvenile act. He was treated under the juvenile system. The juvenile, the consequences stemming from that act should not be used against him when applying for his immigration benefit. Is it your position that in making the good character determination that the immigration judge is barred as a matter of law from considering any of his conduct? I believe, Your Honor, that the judge has to look at the fact whether or not this person was legally capable of committing those crimes. And the fact that he was placed in the youth authority is essentially a legal incapacity. And to use that against him, his act as a 13-year-old when he's 24 years of age, and use that as a basis to deny his case when, in fact, all this evidence was presented regarding how he flourished under the juvenile treatment system, I believe the judge used that and cloaked his decision in order to deny the case just based on sole discretion. He found good moral character. He just didn't. He denied it on discretion. Let me ask you one more. You said that the case law prohibits the immigration judge from using a prior juvenile conviction, using that at all? For deportability or inadmissibility purposes. Do you have a citation for a case on that? It's a matter of deficit, Your Honor. So this is in the BIA precedent? Yes. For the purposes of deportability and inadmissibility, they cannot go behind the adjudication. It's considered a civil adjudication and not a crime. They use that, and in a sense to deny it. Can he look to the facts of what happened in the civil proceeding? In other words, he can take into account the fact that there was a killing? It's not necessarily clear on the matter of deficit, Your Honor. There was a case cited by Respondent's Ninth Circuit case regarding a person who obtained diversion, a treatment program for a drug crime. However, that person was indeed an adult, and he was indeed an adult who committed this act and was not deemed legally incapable of committing the crime before he was convicted. When you come back, I'm going to give you time to revise, because you want to save the time. Could you give us the citation to that case? Which one? The BIA case that you cited. Thank you. Let me ask one more question, though.  Yes, Your Honor. That case doesn't – well, the BIA in this case was not relying on the conviction in the same sense as, you know, Deveson was, right? Here they're relying on the underlying facts. Isn't that a difference from the Deveson case? We believe that that violates, in fact, Deveson, because they're not supposed to be – they're supposed to be treating this as a juvenile adjudication, a civil adjudication. Sure, sure. But can't the BIA do that and still look to the underlying conduct, the violence that was involved? I don't think Deveson prohibits that, does it? I don't think that Deveson prohibits it, but what Deveson holds, it kind of contradicts what Deveson holds, protecting juveniles. All right. Thank you. Good morning. May it please the Court. Jocelyn Wright on behalf of Respondent, the United States Attorney General. Good morning. The government believes this case should be dismissed for lack of jurisdiction. Could you bring your voice up just a little bit? The government submits that this case should be dismissed for lack of jurisdiction under Section 1252A2B, little i. Actually, A2B, under both little i and little 2i. Let me first address the due process allegation that Petitioner has made. I think Petitioner has brought, and our position is that that has actually been nullified. When you say lack of jurisdiction, you include in that lack of jurisdiction to review the due process challenge? Yes, I do, Your Honor, for this reason. The Board of Immigration Appeals conducted a de novo review of this case, and by doing so, any errors by the immigration judge are rendered null and void, and the case for that is Ghali in this Court, G-H-A-L-Y 58F3rd 1425. And so any errors made by the immigration judge, including the allegations of bias, which you don't believe are in the record in any event, have been superseded by the Board's independent review. And there's been no allegation that the Board's independent review of this case was in any way biased or violated any due process protections that were due to Mr. Acosta-Saravia. Now, as to the underlying basis of the Board of Immigration Appeals decision, what they did was they affirmed the immigration judge's conclusion, but it did so on two bases only. And the two bases that they affirmed were discretionary. The first is they found that the INS had rebutted the rebuttable presumption of extreme hardship that's accorded to NICARA applicants for special suspension of cancellation of removal. And they also, in the exercise of discretion, decided that this is not a case that warrants a favorable exercise of discretion. Now, because those two bases are independent and dispositive, all the INS, all the government has to do is to prevail on either one of those grounds. And if so, then the case is over, because affirmance on either one is dispositive of the entire case. And because discretionary denials are beyond this Court's review under 1252a2b, then there's nothing for the Court to review, because the Board and the government's exercise of discretion in denying Mr. Castro-Saravia's applications for relief is dispositive and is final at the administrative level. So you're saying that on the first ground, I understand the second ground, the exercise of discretion because they say even if hardship was rebutted, they go to the alternate ground. The first ground you're saying is discretionary. In other words, they make the determination whether he was correct or not in his assessment as a matter of fact as to whether there was hardship? The whole determination of whether or not the alien has met an extreme hardship standard has established extreme hardship. This Court has held as a discretionary determination. And because the overall nature of the determination is discretionary, it's precluded from judicial review by the terms of the statute under 1252a2b2i. And as to the discretionary determination overall, that this alien does not deserve a favorable exercise of discretion given the seriousness of his crime, regardless of his actions, his juvenile actions, that's also a discretionary determination. Ms. Wright, how would you distinguish our decision in Montero-Martinez, which I think is relevant to this issue, although, as I recall, in that case we were confronted with the legal issue of whether or not a person was a minor child or not, if I remember the facts correctly. That's correct, Your Honor. And since that was a finding of fact that is nondiscretionary, the determination of what is a minor, I believe the Court did exercise jurisdiction. But in Montero-Martinez, that's where the Court also established the principle that any judgment under this section that is entrusted to the discretion of the Attorney General is beyond judicial purview. And that's the point that I think applies to this case. But I do want to address very briefly the reliance on matter of deficit. As Judge Tashima pointed out, it's not that the juvenile act cannot be considered in the exercise of discretion. In deficit, it was the basis of the finding of deportability and inadmissibility. Therefore, it was the ground upon which the alien was denied admission and found deportable. In this case, deportability was already conceded. The only issue before the Board and the immigration judge is whether or not the alien deserves relief from removal. And under those circumstances, the burden of proof is squarely on the alien. And in this case, both the immigration judge and the Board found that his acts, the homicide he committed as a juvenile, is relevant to the discretionary determination whether or not he deserved a favorable exercise of discretion. How do you square that? I think I understand your argument. But how do you square that with the Board rule that juvenile adjudications are normally considered nonconvictions for immigration purposes? Again, that's for purposes of finding deportability or removability. But where the inclusion of the alien. So whether they're aggravated felonies and that sort of thing? Exactly. Exactly. Or whether they're inadmissible on certain grounds for crimes involving moral turpitude, crimes of violence, any of that. But in terms of whether or not an exercise of discretion is warranted, given the seriousness of those acts, then that's completely within what can be considered. Then the IJ can look through and look at the actual conduct to make that determination. Exactly. And the immigration judge in this case specifically said that he wasn't considering it as a conviction. He was simply using it as a serious factor to be weighed in the exercise of discretion. And unless the Court has any further questions, then we ask that this petition be reviewed. Thank you. Thank you. Thank you. You have a minute for rebuttal. Your Honor, we believe that a legal presumption is reviewable for this Court. We're talking about a legal presumption that the government has a burden of rebutting. We believe that that is a legal analysis and not a discretionary analysis. Because we believe that it's similar to a legal threshold, similar to whether a person has accumulated ten years of continuous physical presence in the United States, whether or not a person has been convicted of a crime. Those are legal issues which are reviewable by this Court. We believe that this is addressed in K-law versus INS, in which you can have certain aspects in which discretion is mixed in with a legal finding. And in this case, the legal rebuttal that the government allegedly made can be reviewed by this Court. And we believe that that serves as a basis for jurisdiction before this Court. Okay. Fine. Thank you. Counsel, we thank you both for your arguments. The case is submitted.
judges: Tashima, Fisher, Tallman